IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| EAST TENNESSEE NATURAL GAS CO., ) | | |
| ) | | |
| Plaintiff, ) | Case No. 4:02CV00179 | |
| ) | | |
| v. ) | | |
| ) | | |
| ) | **MEMORANDUM OPINION** | |
| ) | | |
| 2.93 ACRES IN WYTHE COUNTY, ) | By: | Jackson L. Kiser |
| VIRGINIA, JAMES M. HYLTON, ) | | Senior United States District Judge |
| JAMES NEAL HYLTON, et. al. ) | | |
| ) | | |
| Defendants. ) | | |

On the morning of a scheduled jury trial, August 20, 2007, I ruled on various *Motions in Limine* and briefly stated my reasons therefor. This *Memorandum* is to further explain my reasons as to certain motions, which were docket entry numbers [67], [77] and [79].

In brief, these are the numbered motions the grounds for which may be summarized as follows:

1. Motion to exclude the damages testimony of Defendants' expert witness Dennis Gruelle as a matter of law, because he calculated damage to Defendants' property based on damages to abutting property owned by another (Hart-Ball property).

2. That the future development in the opinion of Gruelle is based on speculation.

3. Defendants' property is bisected by Interstate Highway 77 and is unaffected by the Plaintiff's pipeline.

**I.     STATEMENT OF FACTS**

The subject property ("Hylton property") in this case is a 348.8 acre parcel bisected

1

crosswise by U.S. Interstate 77 ("I-77") and State Route 629 ("SR-629") and used by Defendants primarily for cattle farming. In 2002, Plaintiff East Tennessee Natural Gas Co. ("ETNG"), acting pursuant to powers granted by the United States to it for this purpose, condemned a 2.74 acre strip of land in the northeast corner of the Hylton property in order to obtain an easement for laying its natural gas pipeline. The pipeline does not cross either I-77 or SR-629, and is confined to part of the northeast 72 acre parcel. The Hylton property is adjacent to the property litigated in *ETNG v. 7.74 Acres*, No. 4:02cv00104, 2007 U.S. App. LEXIS 11991 (4th Cir. May 22, 2007) ("the Hart-Ball property"). Defendants rely on an expert witness named Dennis Gruelle ("Gruelle"), who has appraised the Hylton property in part based on the devaluation of the Hart-Ball property.

**II.      DISCUSSION**

This Memorandum explains my ruling for three separate *Motions in Limine* filed by ETNG, but many of the issues and rules of law dispositive in all three motions are related. Therefore, I will briefly introduce the motions in turn, discuss Motions [67] and [79] (which are related doctrinally), and then discuss Motion [77].

In Motion [67], ETNG argues that Defendants' expert witness Gruelle has improperly based his appraisal of the diminution in value of the Hylton property on damages to the Hart-Ball property. ETNG contends that under settled precedent, Gruelle's testimony must be excluded because it pertains to irrelevant matters which a jury could not properly consider for damages in this case. In Motion [79], ETNG argues that Gruelle also improperly based his appraisal on damages to the roughly 276.8 acres of property lying on the opposite side of I-77 and SR-629 from the 72 acre parcel with the pipeline ("the northeast quadrant"). ETNG seeks, by Motion

2

[79], to exclude any testimony offered by Gruelle or otherwise that would establish damages to the 276.8 acres of property outside of the northeast quadrant as improper evidence. Finally, ETNG argues in Motion [77] that Defendants, primarily through Gruelle's testimony and supporting documents, improperly determine fair market value by considering the possibility of a future interstate interchange on the Hylton property, and seeks to exclude any evidence of a hypothetical interchange as speculative.

I find ETNG's arguments persuasive, and accordingly, I exclude all evidence regarding damages to tracts of land other than the 72 acre tract through which the pipeline runs. This includes Gruelle's testimony.[1] I also exclude any evidence put forward by the Defendants relating to a possible interstate interchange that could have been placed on the Hylton property because it is speculative and conjectural.

    A.    *Legal Standard for Just Compensation Determinations Where Several Tracts are Involved*

The Fifth Amendment of the United States Constitution guarantees just compensation to property owners whose land is taken pursuant to the sovereign power of eminent domain. Just compensation is generally defined by courts as the fair market value of the property, determined by "the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy" at the time of the taking. *Olson v. United States*, 292 U.S. 246, 257 (1934).

In actions for just compensation, generally all information about the fair market value of

---

[1] At the oral hearing I held on these motions, counsel for the Defendants conceded that Gruelle had not performed an appraisal relating solely to the devaluation of the 72 acre tract in the northeast quadrant. Therefore, his current testimony must be excluded.

3

the land before and after the taking is relevant. *See Lynch v. Commonwealth Transp. Comm'r*, 247 Va. 388, 391, 442 S.E.2d 388, 390 (1994). However, the trial court is vested with considerable discretion in admitting or rejecting evidence of value, and may bar evidence completely where it tends to prove only "[r]emote or speculative advantages and disadvantages." *See id.*

Where a part of an owner's land is taken for public use, just compensation "does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." *Campbell v. United States*, 266 U.S. 368, 372 (1924); *See also Lynchburg v. Peters*, 156 Va. 40, 49, 157 S.E. 769, 772 (Va. 1931). Courts have recognized an exception to this rule where land taken is adjacent to another land owned by the same person or persons, and where both lands are used for a present unified purpose that would be disrupted by the partial taking. *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952). This exception is based upon the idea that a landowner, the integrity of whose lands is destroyed by a partial taking upon one tract, is entitled to full compensation for the integrated tracts. *See Sharpe v. United States*, 112 F. 893, 896 (3d Cir. 1902), *aff'd*, 191 U.S. 341 (1903).

The Ninth Circuit has also adopted an exception to the damages rule in *Campbell* where the land taken is "indispensable" to the overall public project, the taking is substantial, and the damages resulting to the remainder from the partial taking are inseparable from those caused by the use to be made of the lands acquired from others. *See United States v. Pope & Talbot, Inc.*, 293 F.2d 822, 825 (9th Cir. 1961); *United States v. 15.65 Acres of Land*, 689 F.2d 1329, 1332 (9th Cir. 1982). In such cases the landowner can recover damages to the remainder from the use

4

made of adjacent lands of others that were also taken as part of the project. *United States v. 15.65 Acres of Land*, 689 F.2d at 1332-33. While some state courts have followed the Ninth Circuit's rule, it does not appear that any other Circuit has adopted the exception. *See Griffith v. Montgomery County*, 57 Md. App. 472, 480-82, 470 A.2d 840, 844-845 (Md. Ct. Spec. App. 1984); *but see City of Manchester v. Airpark Bus. Ctr. Condo. Unit Owners' Ass'n*, 148 N.H. 471, 474-77, 809 A.2d 777, 780-83 (2002) (considering the Ninth Circuit rule but ultimately applying *Campbell* to bar recovery of separable damages to adjacent lands); *State v. Schmidt*, 867 S.W.2d 769, 778, 1993 Tex. LEXIS 128, at 28-29 (1993) (adopting the Ninth Circuit exception, but applying *Campbell* instead on the facts of the case).[2]

Finally, "courts have wisely left the matter of applying the rules for severance damages to the sound discretion of the individual trial judge to be applied by him to the facts in each case." *United States v. Mattox*, 375 F.2d 461, 465 (4th Cir. 1967) (affirming district court that rejected the landowner's evidence of a possible integrated use of his lands); *see also Sharpe*, 112 F. at 896 (judgments of the separability of lands in determining just compensation depend "upon the facts of the particular case and the sound discretion of the court"). Where reasonable minds cannot differ on the question of unity of use of the lands or where a landowner's theory of integration is too speculative, it is appropriate for the Court to rule upon the question of unity as a matter of law. *See Mattox*, 375 F.2d at 465; 4A, Julius L. Sackman, et al., Nichols on Eminent Domain § 14B.04 (rev. 3d ed. 2007).

---

[2] Whether the exception to *Campbell* applies depends on three elements set forth in *Pope*: (1) indispensability, (2) substantiality, and (3) inseparability and it is left to the trial judge to determine whether they exist. *United States v. 15.65 Acres*, 689 F.2d at 1333.

### B. The Rule in *Campbell* Applies to the Hylton Property and Accordingly, Motions [67] and [79] Must be Granted

The general rule from *Campbell* is that damages to other lands cannot be considered in evaluating the diminution in value to the land with the partial taking. Under *Campbell*, damages in this case are limited to the diminishment in value of the 72 acre tract in the northeast quadrant of the Hylton property.

#### 1. Motion [67] is Granted Because Defendants Cannot Show that an Exception to *Campbell* Applies to this Case

Gruelle's testimony directly references the devaluation of the Hart-Ball property in his assessment of damages to the Hylton property. Because Gruelle's testimony on the devaluation of the Hylton property is therefore based upon "the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking," it is improper under the *Campbell* rule and I granted Motion [67] to exclude Gruelle's testimony.

The first widely accepted exception to *Campbell* is articulated in *Sharpe* and *W. Va. Pulp & Paper Co.* Land used for an integrated purpose may be considered as a whole for damages where the integrated purpose has been destroyed by the partial taking of the land. *W. Va. Pulp & Paper Co.* 200 F.2d at 104; *Sharpe*, 112 F. at 896. This exception, however, requires unity of ownership among the lands. *See W. Va. Pulp & Paper Co.*, 200 F.2d at 103-104 (citing several authorities for the proposition that if "several contiguous lots or tracts in reality constitute an entire parcel used for one general purpose *by the common owner*, the inquiry should embrace all injuries which will be caused to the entire body of land") (emphasis added). It is undisputed that Defendants did not own the Hart-Ball property at the time of the taking. Therefore, the exception

does not apply here.

The mere fact that the pipeline did not have to be laid across the Hylton property, while irrelevant to the amount of just compensation due the Defendants, is persuasive proof that the Hylton property was not "indispensable" to the pipeline project. Therefore, even if I were to adopt the Ninth Circuit's exception to the *Campbell* rule, it would not apply in this case.

Because no exception applies to the present case, *Campbell* is the governing principle with regard to Motion [67] and damages to the Hart-Ball property. Neither Gruelle's testimony nor any other evidence may be offered in this case to show that damages to the Hart-Ball property (even those established by a jury in the Hart-Ball case) are transferable to the Hylton property.

Defendants state that Gruelle can meet the standards for an expert witness established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. The Defendants aver that the possibility of a future interchange contingent upon the commercial development of an adjacent but separately owned property is a fact reasonably relied on by real estate appraisers. This may be true as a matter of common usage – it is not disputed by ETNG – but it is beside the point. If, as a matter of law, damage to adjoining property cannot be considered, then the landowner's expert cannot include such damages in his assessment. Since I hold that evidence of a future interstate interchange is speculative and excluded as a matter of law, Gruelle may not include such speculation in his damages assessment, even if it falls into the domain of facts which experts in a certain field (real

7

estate appraisal) reasonably rely on.[3]

Defendants argue that the goal of condemnation cases is to put the land owner in the same financial position he was in prior to the taking, and that this should include evidence of consequential damages to adjacent lands if such damages disrupted the value of the landowner's remainder. This could happen, for example, where the landowner has an imminent plan of assemblage with the adjacent property at the time of the taking. Defendants argue this precise point, but do not put forward any evidence showing such a plan in the reasonably near future, a showing which is required as a matter of law before such evidence is admissible. *McCandless v. United States*, 298 U.S. 342, 345 (1936) (requiring that a plan for future development be probable in the "reasonably near future").

The correct method of valuation requires considering all evidence of the "highest and best use" of the property both before and after the taking. Defendants believe that this requires a consideration of all factors influencing such a valuation, including the devaluation of nearby property. This argument proves too much. A state appellate court, responding to precisely the same argument stated:

> Finally, the defendants argue that following the *Campbell* rule is contrary to the 'before and after' and the 'highest and best use' methods of calculating damages. These arguments lack merit because they are aimed at valuation, which is irrelevant to the initial *Campbell* analysis of what damages are compensable in a partial takings case. In essence, the damages the defendants seek are no different from the injury suffered by any property owner in the defendants' vicinity whose land was not taken. Such general damages are not

---

[3] By relying almost entirely on speculative possibilities for developing the Hylton property in his valuation, it is possible that Gruelle is also simply disqualified as an expert witness. However, here I am excluding the *subject matter* of speculative testimony, not simply one particular expert who is testifying thereto.

8

compensable.

*City of Manchester v. Airpark Bus. Ctr. Condo. Unit Owners' Ass'n*, 148 N.H. 471, 477, 809 A.2d 777, 782-83 (2002). Similarly, in this case Defendants' attempt to show damages from the pipeline's effect on the Hart-Ball property is not contingent on the pipeline coming through Defendants' property at all. Even if the pipeline had only traversed the Hart-Ball property and left the Hylton property entirely alone, the Defendants here would still complain about its effect on possible future developments of their property. But in that hypothetical case, there would be no taking and thus no compensation at all. Such general damages have nothing to do with the partial taking of Defendants' property, and cannot be considered for valuation purposes.

Defendants argue that *Campbell* does not apply to the facts of this case, and that instead the cases distinguished in *Campbell* are applicable. Defendants specifically argue in their brief that the Hylton property is comparable to cases where railroad tracks were placed on landowners' property. *See Campbell*, 266 U.S. at 372; *Blesch v. Chicago & Northwestern Ry. Co.*, 43 Wis. 183, 1877 Wisc. LEXIS 170 (1877); *Chicago, K. & N. Ry. Co. v. Van Cleave*, 52 Kans. 665, 33 P. 472 (1893).

In *Blesch*, a six-inch-wide portion of railroad track was constructed without permission along the border of the landowner's property, and the landowner sued the railroad company in an action for trespass. The Wisconsin Supreme Court held that in a trespass case, direct and consequential damages from the introduction of a railroad onto the edge of the landowner's land were recoverable in full. *Blesch*, 43 Wis. at 195, 1877 Wisc. LEXIS 170, at *20-21. Such damages would include the risk of fire from trains going by, great noise, the difficulties in accessing the land over the tracks when the railroad was so heavily used, and inconvenience to

9

the landowner's existing brewery business. *Id.* at 194-95, 1877 Wisc. LEXIS 170, at *19-20. Because the inconveniences and nuisances afflicted the whole of the property and were inseparable from the partial trespass on the property, the landowner could recover for consequential damages to his entire property. *Id.* at 195, 1877 Wisc. LEXIS 170, at *20-21.

*Blesch* is a very different case than the present one. Besides the fact that the present case is not one of trespass, but rather one for just compensation, none of the distinct problems of a 19th century railroad running through the Hylton property are present in the case of a buried pipeline. A landowner who has the misfortune to have a pipeline buried underneath his land, where he has no existing commercial enterprise, is hardly in the same situation as the owner of a brewery beset upon by a constant stream of loud, dangerous and inconvenient train traffic as in *Blesch*. The impact of the pipeline will be only on the land under which it runs, and perhaps to the 72-acre tract on which it runs as a whole. A buried pipeline on the Hart-Ball property does not generate negative externalities by way of nuisance (such as noise, railcar accidents, or inconvenience of travel) that would affect adjacent lands, such as the Hylton property. It is hard to see how the facts of this case resemble in any part those in the *Blesch* case. If *Blesch* allows consequential damages, it is only because the railroad tracks on the border of the landowner's property affected the whole of the landowner's property as one unit due to nuisance, not because of damages to adjacent property not owned by the landowner at all. If anything, a careful reading of *Blesch* shows why the Hylton property falls squarely under the ambit of the rule in *Campbell*.

Finally, Defendants argue that the special damages to other property affected by the pipeline should be considered in computing the damages to the Hylton property. Defendants argue that because special direct benefits to the remainder in a partial taking are used to deduct

10

from the amount owed in just compensation, so too should consequential damages to the remainder be considered, even if its source is damages to adjacent lands.

The U.S. Supreme Court held in *United States v. River Rouge Improvement Co.* that special benefits to a taken property could be used by the jury in a just compensation case to lower the amount owed to a landowner. 269 U.S. 411, 416 (1926). That case held that "direct and special" benefits to land, such as more convenient access from a public road, could be considered by a jury in awarding just compensation. *Id.* The rationale for this rule is that if a partial taking economically improves the remaining property of the landowner, this "benefit" to the property should be deducted from the just compensation, the goal of which is to put the landowner in the economic position he was in prior to the taking. Defendants assert that the reverse proposition should also be true – that damages as a result of the whole pipeline project should be recoverable by an individual landowner who had a partial taking as part of that project. This does not follow.

The argument that special consequential damages to other lands should be considered in a just compensation valuation as a corollary to the special benefits rule fails for several reasons. First, no court has ever agreed with this argument and held that consequential damages to other lands should be part of the valuation of the land in question. Second, such a ruling would stand in direct contradiction to *Campbell*, which held that just compensation "does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." *Campbell*, 266 U.S. at 372 (1924). Finally, the economic reasoning behind the special benefits rule is aimed at putting the landowner in as good a position as he was prior to the taking, to prevent overcompensation. By contrast, allowing consideration

11

of damages to adjacent lands due to the same public project that resulted in the partial taking of the landowner's property raises a strong possibility that the landowner could recover far more than his land was worth prior to the taking, and be overcompensated.[4]

However, the goal of the Fifth Amendment Takings Clause is remunerative and not punitive. *Campbell*, 266 U.S. at 371 (landowner not entitled to overcompensation). The Hart-Ball property has already been compensated for its loss by a jury, and forcing ETNG to pay twice for its taking of that particular property would create an inappropriate windfall for the Defendants here.

Since *Campbell* applies to this case, and Defendants' arguments against Motion [67] are unavailing, I granted this Motion.

> 2. *Motion [79] is Granted Because Defendants Cannot Show that an Exception to* Campbell *Applies to this Case*

I granted Motion [79], to exclude any evidence by Defendants of damages to roughly 270 acres of the Hylton property not in the northeast quadrant, because it cannot be shown that an exception to the rule in *Campbell* applies.

As noted *supra*, an exception to *Campbell* allows considering damages to separate and independent tracts of land where the lands are under the same ownership and used for a unified purpose. *See W. Va. Pulp & Paper Co.*, 200 F.2d at 104; *Sharpe*, 112 F. at 896. This exception

---

[4] For example, a jury determining just compensation for one property could, under Defendants' rule, look to an adjacent property to see what damages it was awarded for a partial taking in the same public project. Despite numerous differences in the evidence of probable development on the adjacent land versus the land in question, the jury might be prejudiced such that they would award a comparable award to the latter. In this way, the adjacent property that had already settled with the taking party might be covertly used as a "comparable" property by the jury, even in a case where this is wholly inappropriate.

12

does not apply to the Hylton property.

The four tracts that make up the Hylton property are separated from each other by public roads, and are essentially separate and distinct tracts of land. Therefore, damages to lands lying across the public roads from the northeast quadrant cannot be considered unless Defendants could show that there is a unity of use between the otherwise physically separated parcels. Defendants cannot make this showing. In particular, the 270-acre tract is wholly separated from the northeast quadrant by I-77, a limited access highway. Thus, any development of the taken tract would be separate from development of the remainder of the land.

In *Sharpe*, the court denied the landowner's attempt to put forward evidence of damage to other parcels which were separated by a public road where there was no unity of use, a situation analogous to the present one. 112 F. at 896 (3d Cir. 1902). Here, the Defendants have not offered evidence showing a disruption to cattle grazing on *all* the Hylton lands because of the pipeline in the corner of the northeast quadrant. Defendants have not offered any evidence of a unified use of the four tracts at all. Instead, Defendants point to a unity of *future use* in the form of commercial development of all the tracts, but that will not do. *Commonwealth Transp. Comm'r of Va. v. Glass*, 270 Va. 138, 148-153, 613 S.E.2d 411, 416-20 (2005) ("[m]ere possibility or conjecture that there may be a prospective joinder of the additional parcels in a unified but unknown development with the actual take parcels dose not suffice to constitute unity of use in a condemnation proceeding."). As I state *infra* with respect to Motion [77], the proposed unified future use to which Defendants point, the hypothetical interstate interchange, is too speculative to be considered by a jury.

Absent such a showing of unified use, the attempt to show damages to the tracts on the

13

opposite side of the public roads from the pipeline is thwarted by the rule of *Campbell*. I therefore granted Motion [79], and no evidence of damages to the Hylton property except to the 72 acre tract where the pipeline runs in the northeast quadrant will be admitted.

### C. *Testimony About a Future Interstate Interchange on the Hylton Property is Highly Speculative and is Excluded*

Defendants seek to establish a theory of damages involving a hypothetical interstate interchange that could have been developed on their land, at the intersection of I-77 and SR-629. This interchange would likely have been developed, the Defendants aver, had the Hart-Ball property also been developed by Cabelas or Wal-Mart. This hypothetical interstate interchange is at the heart of all the motions ruled upon in this *Memorandum*. ETNG, in Motion [77], seeks to exclude any testimony relating to such a hypothetical interchange since it is speculative. There is very little evidence of contractual negotiations or county officials acting in reliance on any imminent development of the Hylton property for such a purpose. Instead, Defendants rely only on conjecture about its possibility.

Under settled law, "[e]lements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value." *Olson v. United States*, 292 U.S. 246, 257 (1934); *see Mattox*, 375 F.2d 461, 463-64 (4th Cir. 1967) (landowner has no right to severance damages where there is only physical proximity and the "possibility" of an integrated use). Thus, any such theory of a future unified use of the property must be reasonably probable and not merely hypothetical at the time of the taking.

14

Defendants argue in their *Memorandum* in opposition to Motion [77] that *Olson* actually countenances the finder of fact to consider a future development for valuation purposes where there was even a "reasonable possibility" of combining multiple tracks of land for such development. *Defs.' Mem. in Opp'n to Pl.'s Mot. in Limine to Exclude the Testimony of Dennis W. Gruelle* [85] 4, 17-18. While Defendants' quotation of the language of "possibility" used in one part of *Olson* is accurate, *Olson*, 292 U.S. at 256-57, I believe the actual holding in *Olson* is more aptly described by a subsequent case:

> The rule is well settled that, in condemnation cases, the most profitable use to which the land *can probably be put in the reasonably near future* may be shown and considered as bearing upon the market value; and the fact that such use can be made only in connection with other lands does not necessarily exclude it from consideration if the possibility of such connection is reasonably sufficient to affect market value.

*McCandless v. United States*, 298 U.S. 342, 345 (1936) (citing *Olson* at 255-56) (emphasis added); *see also Mattox*, 375 F.2d at 463-64.

No reasonable trier of fact could find in this case that there was a reasonable probability that the Defendants would develop their property into an interstate interchange in the near future. According to the evidence presented by Defendants, there were discussions but no firm plans, speculation but no contracts. Were it proper to submit such evidence to a jury in a just compensation case, we would be asking the jury to imagine the best possible use the landowner *dreamed of*, as opposed to one he was actually in a position to negotiate at the time of the taking. It is my duty to protect the proceeding from just such a high level of speculation on the part of the jury, and to act as a gatekeeper to exclude conjectural evidence of value. *See Mattox*, 375 F.2d at 465; *see also Sharpe*, 112 F. at 896.

15

Evidence that tends to establish that a commercial retailer might have developed the Hart-Ball property near the Hylton property tends to show only the remote possibility that the Hylton property would be useful as an interstate interchange. But it does not make it any more probable absent additional circumstantial evidence that county officials actually planned on putting an interstate interchange on the Hylton property *in the near future*. Since Defendants have not presented anything more than slight evidence of a possibility, the matter is purely speculative.

Therefore it is proper to exclude such testimony and I granted Motion [77].

### III. CONCLUSION

For the reasons stated herein, I **GRANTED IN PART** Plaintiff's Motion [67] to exclude testimony by Defendants' expert witness Gruelle, and **GRANTED** Plaintiff's Motion [79] to exclude evidence of damages to other portions of the Hylton property without the pipeline that lie on the other side of public roads I-77 and SR-629. Going forward, Defendants may offer testimony by Gruelle or any other witness as to the northeast quadrant but not as to other adjacent lands, whether owned by the Hyltons or not (e.g., the Hart-Ball property). Finally, I **GRANTED** Plaintiff's Motion [77] to exclude testimony on a possible interchange being constructed on the Hylton property.

The clerk is directed to send a copy of this *Memorandum Opinion* to all counsel of record.

ENTERED this 13th day of September, 2007.

s/Jackson L. Kiser  
Senior United States District Judge